IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALIEY C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 3124 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Haliey C.'s application for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 18, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 21, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

# BACKGROUND

## I. Procedural History

On July 22, 2018, Plaintiff filed a claim for SSI, alleging disability since April 13, 2017, due to anxiety, fibromyalgia, and borderline personality disorder. [Dkt. 13-1, R. 172, 200.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 81, 96.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone on August 4, 2020. [R. 36-67.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 38, 43-60.] Vocational expert ("VE") Diamond Warren also testified. [R. 60-66.] On August 27, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 18-31.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 6-8.]

## II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 18-31.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her application date of July 22, 2018. [R. 20.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity, fibromyalgia, depressive disorder, anxiety disorder, and borderline personality disorder. [R. 20.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 20-22.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she can only perform simple, routine tasks, make simple work-related decisions but not at a fast production

pace rate, and can have no more than occasional interaction with the public. [R. 22-29.] At step four, the ALJ concluded that Plaintiff had no past relevant work. [R. 29.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 29-31.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v.*

3

*Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

  The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ

4

as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.     Analysis**

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate Plaintiff's fibromyalgia symptoms, (2) concluding that Plaintiff had the capacity to perform light work, and (3) finding that Plaintiff could perform jobs in the national economy. [Dkt. 18, Pl.'s Mem. at 7-11.] For the reasons that follow, the Court affirms the ALJ's decision.

Plaintiff's arguments center around the ALJ's consideration of her fibromyalgia, and in part the alleged lack of care that the ALJ gave to her testimony that she experienced fibromyalgia "flare ups" that occurred about four times a month and lasted at least two hours at a time, during which time she is completely debilitated. [Pl.'s Mem. at 7-11.] As the Seventh Circuit recently outlined in *Hohman v. Kijakazi*, 72 F. 4th 248, 2023 WL 4230205 (7th Cir. June 28, 2023), because of the nature of fibromyalgia, an ALJ must carefully consider a plaintiff's reported fibromyalgia symptoms:

> We have previously observed that disability claims rooted in the effects of fibromyalgia warrant careful attention given the nature of the illness. See *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) (overturning an ALJ's credibility determination where "the ALJ's analysis reveal[ed] that he misunderstood the nature of [the claimant's] fibromyalgia pain"). The Social Security Administration also recognizes the complexity of fibromyalgia and the importance of subjective evidence in assessing a claimant's ability to work. See SSR 12-2P, 2012 WL 3104869. For example, when objective medical evidence conflicts with a claimant's description of the intensity or persistence of pain, an ALJ must consider all evidence in the record—such as the claimant's daily activities, medications, course of treatment, and statements by other people about the claimant's symptoms—before determining the credibility of a claimant's self-reported pain. See SSR 12-2P(IV)(B). ALJs must also take care to examine the claimant's treatment over time because fibromyalgia pain waxes and wanes. See SSR 12-2P(VI)(D) (explaining that ALJs must "consider a longitudinal record whenever possible" to assess fibromyalgia pain).

*Id*. at \*2. In general, the factors used to conduct an evaluation of plaintiff's fibromyalgia symptoms are the same as those used to assess other conditions—along with objective evidence, a plaintiff's level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. *See* SSR 12-2p, 2012 WL 310489, at \*5 (referencing using "the two-step process" in regulations and SSR 96-7p to evaluate a person's statements about her symptoms); 20 C.F.R. §416.929(c); SSR 16-3p, 2017 WL 5180304, at \*7-8 (Oct. 25, 2017).[3] A reviewing court must still give the ALJ's evaluation of Plaintiff's subjective symptoms "special deference" and "will overturn it only if it is patently wrong." *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020) (internal quotation marks omitted) (unpublished). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted).

To start her evaluation, the ALJ recounted many of Plaintiff's complaints concerning her fibromyalgia, including that she has "daily fatigue and pain" at a 4 or 5 out of 10 as well as "muscle spasms, tenderness, acid reflux, nausea, constipation, poor memory and pins and needles sensations." [R. 23.] The ALJ specifically acknowledged that Plaintiff "indicated she has experienced fibromyalgia flares that last hours." [*Id.*] Additionally, the ALJ noted that Plaintiff stated that she experienced stiffness, was sensitive to pain, had tingling headaches, and had trouble falling asleep because of her pain. [*Id.*] Plaintiff did not exercise but did attend

---

[3] For cases filed on or after March 28, 2016, such as this one, SSR 16-3p supersedes SSR 96-7p and "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, at \*2. Thus, although the Seventh Circuit cases cited herein use the term "credibility," this Court avoids doing so unless quoting from a case. Regardless, the factors to consider when evaluating a plaintiff's subjective symptoms remain the same. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p, 2017 WL 5180304, at \*7-8 (Oct. 25, 2017).

water therapy until her insurance stopped covering it, and she could not afford to pay for the visits. [*Id.*] The ALJ also detailed most of the treatment notes in the record. [*See* R. 23-28.]

In the ALJ's view, Plaintiff's subjective symptom reports of "constant fatigue, body pain, muscle spasms and tenderness" were undermined by her physical exams, which had "few significant objective findings." [R. 23.] Although physical exams showed that Plaintiff had tenderness in some areas, they were otherwise unremarkable: she consistently had normal gait and normal strength. [R. 28.] Coupled with Plaintiff's improvement with medication, the ALJ thought the objective evidence undermined the severity of Plaintiff's described limitations. [*Id.*] Thus, the ALJ permissibly pointed out these identified discrepancies (between Plaintiff's reports concerning her fibromyalgia symptoms and the objective medical evidence) as one reason she did not view Plaintiff's subjective symptoms as entirely consistent with the record. *See Denise E. v. Kijakazi*, No. 21 C 1211, 2023 WL 3792261, at *5 (N.D. Ill. June 2, 2023); *Kinnari A. v. Saul*, No. 19 C 760, 2020 WL 1863291, at *12 (N.D. Ill. Apr. 14, 2020).

But the ALJ did not discount Plaintiff's subjective symptoms solely based on the lack of objective findings. The ALJ also adequately considered Plaintiff's daily activities and overall level of activity and concluded that they did not support a finding of additional limitations on her ability to work beyond the RFC (light work with certain non-exertional limitations). [R. 23.] *See* 20 C.F.R. § 416.929(c)(3)(i); *Hohman*, 2023 WL 4230205, at *2. For example, the ALJ viewed Plaintiff's reports of spending most of her day reading, going online, playing computer games, and sewing as undermining her struggles with "fibro fog" (an impairment of memory because of fatigue from fibromyalgia). [R. 23.] The ALJ also identified Plaintiff's reported activities of stretching daily to help with her pain, reading, sewing, crocheting, driving on rare occasion, and doing laundry in the kitchen with breaks, and seemingly found that these activities

7

did not mean that Plaintiff was more limited beyond light work. [R. 23.] Additionally, the ALJ understood Plaintiff's treatment provider's suggestion that Plaintiff exercise as treatment for her fibromyalgia and to aid weight loss to mean that the provider thought she had the "capacity for exertional activity." [R. 28.]

Further, the ALJ considered Plaintiff's medication and course of treatment in assessing her subjective symptom reports. *See* 20 C.F.R. § 416.929(c)(3)(iv-v); *Hohman*, 2023 WL 4230205, at *2. The ALJ pointed out that Plaintiff reported primarily treating her condition with medical marijuana, including during her flareups. [R. 23.] Although the ALJ did not draw any explicit conclusion as to Plaintiff's course of treatment, she nonetheless documented Plaintiff's treatment with different medications, such as Gabapentin and Flexeril, her participation in water therapy, and her ongoing use of marijuana to treat her fibromyalgia. [R. 23-24, 26.] And the ALJ generally concluded that Plaintiff's condition was improved when she was compliant with medication. [R. 28.]

Given the foregoing, the Court cannot say that the ALJ's evaluation of Plaintiff's subjective symptoms was "patently wrong." *See Apke*, 817 F. App'x at 257. Plaintiff spends much of her brief reciting her testimony and reports to doctors concerning her symptoms, and some of the medical evidence with which she contends her symptom reports are consistent, but this is not enough to show that the ALJ's decision must be overturned. [*See* Pl.'s Mem. at 8-10.] Even if the ALJ could have said more about Plaintiff's allegations concerning her fibromyalgia "flare ups"—and indeed, even if Plaintiff or the Court could weigh the evidence differently in the first instance—the ALJ's evaluation was nonetheless in accord with the regulatory factors. This is because the ALJ reasonably considered the objective evidence, Plaintiff's daily activities, her general activity level, and her course of treatment, and the ALJ's decision is therefore supported

8

by substantial evidence. *See, e.g., Kolar v. Berryhill*, 695 F. App'x 161, 162 (7th Cir. 2017) (unpublished) (explaining that fibromyalgia pain is subjective and difficult to assess and "[a]lmost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence"); *Michelle V. v. Kijakazi*, No. 21 C 7959, 2023 WL 2390541, at *3 (N.D. Ill. Mar. 7, 2023) (rejecting plaintiff's claim that ALJ improperly discounted her complaints of fibromyalgia pain, as not "patently wrong," where ALJ reasonably addressed plaintiff's allegations and court could not permissibly reweigh evidence).

Next, as to the RFC of light work with certain non-exertional limitations, the Court concludes that the ALJ's decision also is supported by substantial evidence. Given that Plaintiff's challenge is to the determination that she could perform light work, the Court focuses on the ALJ's analysis of Plaintiff's physical limitations. The ALJ considered not only Plaintiff's subjective symptoms but also the medical evidence and the state agency physician consultants' prior administrative medical findings, which was the only opinion evidence in the record. The ALJ found Dr. Michael Nenaber's opinion on reconsideration review that Plaintiff could perform light work persuasive as it was (1) based on his thorough review of the available medical records and "his comprehensive understanding" of the Social Security rules and regulations, (2) internally consistent and supported with a reasonable explanation, and (3) consistent with the medical evidence "showing few remarkable findings during physical exams." [R. 29; *see* R. 89-91.] The ALJ rejected the opinion of Dr. Judith Kelly on initial review that Plaintiff could perform medium work because "[e]vidence showed ongoing complaints of all over pain, as well as tenderness noted on physical exams," which the ALJ thought supported that Plaintiff was more limited. [R. 29; *see* R. 75-76.] Plaintiff raises no meaningful challenge to the weighing of these opinions, and the Court concludes that the ALJ's evaluation of these opinions, along with

9

her assessment of Plaintiff's subjective symptoms, provide sufficient support for the ALJ's RFC finding that Plaintiff could perform light work.

As a final matter, Plaintiff contends that the ALJ erred by not adopting in the RFC a need to lie down for two hours during the workday once a week because of a fibromyalgia flare up, which the VE testified on examination by Plaintiff's counsel would preclude any sort of work. [Pl.'s Mem. at 10-11; *see* R. 66.]  But, for the reasons just discussed, the ALJ reasonably did not find Plaintiff's subjective symptoms, including her reported frequency and severity of her flareups, entirely consistent with the record.  Thus, the ALJ did not error by omitting from the RFC restrictions—such as a need to lie down during the workday—which the ALJ concluded were unwarranted.  *See Reynolds v. Kijakazi*, 25 F. 4th 470, 473 (7th Cir. 2022).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 18] is denied, and the Commissioner's motion for summary judgment [dkt. 21] is granted.  The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date:  7/19/23

_____
BETH W. JANTZ
United States Magistrate Judge

10